IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SANDRA T.-E. and RUFUS E., on their own behalf and as next friend for C.E., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT SPERLIK, PRINCIPAL GRINDEL, and SOUTH BERWYN SCHOOL DIST. 100,<br><br>Defendants. | 05 C 473<br><br>Judge Hibbler |
| DEBORAH K. and GEORGE K., on their own behalf and as next friend for M.K., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT SPERLIK, PRINCIPAL KAREN GRINDEL, CINDY SCHWARTZ, and SOUTH BERWYN SCHOOL DIST. 100,<br><br>Defendants. | 05 C 628<br><br>Judge Hibbler |
| JUDITH B. and EMANUELE B., on their own behalf and as next friend for K.B., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT SPERLIK, PRINCIPAL KAREN GRINDEL, and SOUTH BERWYN SCHOOL DIST. 100,<br><br>Defendants. | 05 C 811<br><br>Judge Hibbler |
| RAYMOND S. and ELEVI S., on their own behalf and as next friend for A.S., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT SPERLIK, PRINCIPAL KAREN GRINDLE, and SOUTH BERWYN SCHOOL DIST. 100,<br><br>Defendants. | 05 C 1041<br><br>Judge Hibbler |

FILED
JUN 10 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:

Royal B. Martin
Martin, Brown & Sullivan
321 S. Plymouth Ct., 10th Floor
Chicago, IL 60604

Allen Duarte
Ancel, Glink, Diamond, *et al.*
140 South Dearborn, Suite 600
Chicago, IL 60603

Michael R. Graf
750 W. Northwest Highway
Arlington Heights, IL 60004

Please take notice that on June 10, 2005, undersigned counsel filed the attached Response with the Clerk of the United States District Court, located at 219 South Dearborn, Chicago, Illinois.

_____
Attorneys for Plaintiff

LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607

## CERTIFICATE OF SERVICE

I, Mark Reyes, certify that on June 10, 2005, I delivered the attached Notice and Response to the above-named counsel of record by facsimile.

_____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SANDRA T.-E. and RUFUS E., on their own behalf and as next friend for C.E., a minor child, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT SPERLIK, PRINCIPAL GRINDEL, and SOUTH BERWYN SCHOOL DIST. 100, <br><br> Defendants. | 05 C 473 <br><br> Judge Hibbler |
| DEBORAH K. and GEORGE K., on their own behalf and as next friend for M.K., a minor child, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT SPERLIK, PRINCIPAL KAREN GRINDEL, CINDY SCHWARTZ, and SOUTH BERWYN SCHOOL DIST. 100, <br><br> Defendants. | 05 C 628 <br><br> Judge Hibbler |
| JUDITH B. and EMANUELE B., on their own behalf and as next friend for K.B., a minor child, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT SPERLIK, PRINCIPAL KAREN GRINDEL, and SOUTH BERWYN SCHOOL DIST. 100, <br><br> Defendants. | 05 C 811 <br><br> Judge Hibbler |
| RAYMOND S. and ELEVI S., on their own behalf and as next friend for A.S., a minor child, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT SPERLIK, PRINCIPAL KAREN GRINDLE, and SOUTH BERWYN SCHOOL DIST. 100, <br><br> Defendants. | 05 C 1041 <br><br> Judge Hibbler |

FILED
JUN 10 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANT
DISTRICT'S MOTION TO DISMISS**

Plaintiffs, Deborah K. and George K., Judith B. and Emanuele B., Raymond S. and Elevi S., by and through their attorneys, LOEVY & LOEVY, respond to Defendant District's Motions to Dismiss, as follows:

## I. INTRODUCTION

The District's Motions should be denied. Plaintiffs bring actionable claims that: (1) the District policymakers caused the equal protection violation of Plaintiffs' rights; (2) the District is liable under *respondeat superior* for Defendant Sperlik's assault and battery; (3) the District is liable for its negligent retention and supervision of Plaintiffs' abuser; (4) the District is liable under the doctrine of *respondeat superior* for the intentional infliction of emotional distress on Plaintiffs; (5) the District is subject to premises liability; and (6) the District is liable for violating a special duty relating to Plaintiffs.

## II. FACTS

### Background

Plaintiffs M.K., K.B. and A.S. are three of numerous victims of Robert Sperlik, a predatory pedophile who used his job as a teacher for the District to molest dozens of girls, all under the age of thirteen, over a period of years. For the past eighteen years, the District employed Sperlik, one of the District's two band instructors in six of the District's schools.

Sperlik admitted to abusing his position of trust in the Berwyn schools as a band teacher by abusing his students, including Plaintiffs. Not only did Sperlik admit to touching young girls inappropriately, but he also admitted to tying them up with duct tape. Sperlik abused so many girls that he now faces approximately 243 criminal counts related to that abuse, including charges of solicitation, aggravated kidnaping, and aggravated criminal sexual abuse.

Sperlik's position as a grammar school band instructor placed him in direct and close contact with young girls. Sperlik provided one-on-one instruction to his pupils in a secluded school office, meaning he was routinely alone with young children. The District also permitted Sperlik to instruct children in the basement of his home.

Dating at least as far back as 1999, female elementary school students complained about inappropriate touching by Sperlik, yet Grindle, Schwartz, the District, and other as-yet unidentified school officials facilitated the abuse by ignoring and minimizing his conduct. Sperlik's assaults occurred between 1999 and 2003 while Sperlik was working at the Irving and Pershing Elementary Schools.

### Sperlik's Abuse Reported to Defendant Grindle

In or about 1999, three young girls contemporaneously reported Sperlik's sexual abuse to the school authorities. In particular, they wrote and submitted a letter that was forwarded to Pershing Elementary School's principal, Defendant Grindle. This letter expressly advised that Sperlik had touched the girls sexually.

After receiving that letter, Defendant Grindle telephoned the mother of one of the girls and falsely told her that the girl had reported only that Defendant Sperlik had inappropriately touched her knee and hair. Defendant Grindle did not share with the girl's parents the letter describing the abuse in sexual terms, or any of the sexual allegations.

### Sperlik Allowed to Continue to Abuse Girls

Grindle and the District thereafter refused to take any genuine measure to stop Sperlik's abuse. Instead, Defendants falsely re-characterized the complaints as involving nonsexual, benign touching. Sperlik was later reprimanded in or about 2001 and again in 2002 for "inappropriate touching." These reprimands directed Sperlik to desist from touching students further and to keep his door open if he met with students.

District officials, however, took no steps to prevent Sperlik from continuing his pattern of abuse and failed to remove him the classroom, where he continued to pose a danger to other children. Additionally, as-yet unidentified District officials failed to bring the student complaints, or even the reprimands, to the attention of the appropriate authorities. Rather than reporting these allegations to the local police department or the Department of Child and Family Services (DCFS) as required by law given the victims' status as minors, these as-yet unidentified officials instead buried the complaints and the resulting reprimands in the District's files, where the documents remained concealed and undisclosed. Moreover, at no time did the District ever notify any District parents about the accusations against Sperlik. By their inaction, District officials thus facilitated Sperlik to continue victimizing children over a period of years.

The District did not remove Sperlik from the classroom or take any other steps to stop Sperlik's abuse until January 16, 2005, the day before Sperlik's arrest on multiple sexual assault charges. As a result of this deliberately indifferent inaction, Plaintiffs, together with other young girls, were subjected to ongoing sexual harassment and discrimination.

### Sexual Abuse of A.S.

A.S. is a 15-year old girl who is now in the tenth grade. Her parents are Eliva S. and Raymond S. In or about 2000, when A.S. was approximately ten years old and in fifth grade at Pershing Elementary School, A.S. was enrolled in Sperlik's music class offered by the Defendant District. A.S.'s music class initially consisted of general class sessions. Sperlik then sent a letter to A.S. and her parents advising them that he wanted to provide clarinet lessons to A.S. one day a week at 7:30 a.m., before school started. A.S. was enrolled in those lessons with two other girls (though only one of those girls regularly participated).

Unbeknownst to A.S.'s parents, Sperlik used the private tutorial sessions to sexually abuse A.S. and another girl in A.S.'s music class. This sexual abuse included binding the

4

girls with duct tape and touching them. The abuse took place in the private room provided to Sperlik by the District.

### Sexual Abuse of M.K.

M.K. is a 14-year old girl who is now in the eighth grade. Her parents are Deborah K. and George K. In or about 2001, when M.K. was about ten years old and in fifth grade at Pershing Elementary School, she enrolled in Sperlik's music class offered by the District. M.K.'s music class consisted of some general class session and private tutorials with one other girl in a private room at Pershing Elementary School.

Unbeknownst to M.K.'s parents, Sperlik used the private tutorial sessions to engage in sexual abuse of M.K. and other girl. The abuse took place in a private room provided by the District and used by Sperlik for his illicit sexual gratification.

### Concealment of M.K.'s Complaint

M.K. and her mother Deborah K. contemporaneously reported the sexual abuse to the school authorities; in particular they went to Defendant Grindle's office and told her about what happened. After talking to M.K. and Deborah K., Grindle refused to allow Deborah K. to participate in any process involving Sperlik. Rather, Grindle interviewed M.K. alone in her office and then interviewed Sperlik alone.

Grindle and the District thereafter refused to take any genuine measures to stop Sperlik's abuse. They also failed to forward the growing number of abuse reports to DCFS. Seeing that Grindle would not help her, M.K. reported the sexual abuse to District Social Worker Cindy Schwartz, who also failed to take any action to protect M.K. or other children from ongoing abuse. Moreover, at no time did the District ever notify any District parent about any of the accusations against Sperlik. By their inaction, District officials permitted Sperlik to continue to victimize children over a period of years.

### Sexual Abuse of K.B.

K.B. is a 14-year old girl who is now in the eighth grade. Her parents are Judith B. and Emanuele B. In or about 2002, when K.B. was approximately ten years old and in sixth grade at Irving Elementary School, K.B. was enrolled in Sperlik's music class offered by the District. K.B.'s music class consisted of some general class sessions and private tutorials with another girl in a private room at Irving Elementary School.

Unbeknownst to K.B.'s parents, Defendant Sperlik used the private tutorial sessions to sexually abuse K.B. and other girls in K.B.'s music class. This sexual abuse included binding the girls with duct tape and molesting them. The abuse took place in a private room provided to Sperlik by the District and used by Sperlik for his illicit sexual gratification.

### Discovery of the Abuse and Sperlik's Confession

Due to the deliberately false information supplied by school officials, the parents of the three girls who wrote the letter given to Grindle never learned of the true nature of the abuse. It was not until roughly five years later, when one of the girls had turned 15-years-old, that she understood the magnitude of Defendants' concealment. On or about January 12, 2005, the now-adolescent girl finally informed her parents of the nature of Sperlik's abuse, as well as about the contemporaneous letter she had written describing those abuses.

Upon learning for the first time that their daughter had been sexually abused, the girl's parents were horrified. They immediately contacted the police on or about January 12, 2005. After investigating, the police credited the girl's account. Sperlik was arrested on January 17, 2005. After his arrest, Sperlik confessed in writing that he touched 11- and 12-year old female students after tying and duct-taping them to desks in classrooms.

### III. ARGUMENT

Defendants' Motions to Dismiss are without merit because Plaintiffs' Complaint sufficiently pleads viable claims for relief for Defendants' violation of their rights under the U.S. Constitution and Illinois law.

A.  **The Legal Standard On a Motion To Dismiss**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all well-pleaded facts alleged in the complaint as true and must draw all reasonable inferences in favor of the non-movant." *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003). A motion to dismiss will succeed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Importantly for the Motions here, Plaintiffs' Complaint must be read as a whole to decide if it appears that they could possibly prove any set of facts to support their claim. *Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief*, 291 F.3d 1000, 1008 (7th Cir. 2002). In reading the whole Complaint, the court assumes the truth of the facts alleged in the pleadings and construes the allegations liberally. *Liberty Mutual Insurance Co. v. Construction Management Services, Inc.*, 2004 WL 2271811 at *2 (N.D. Ill. 2004).

B.  **Defendant District's Motions to Dismiss Should Be Denied.**

   1.  **Plaintiffs properly allege in Count I that the District's policy-maker(s) caused Plaintiffs' harm.**

Plaintiffs state a valid Equal Protection claim against the District, which is liable for depriving Plaintiffs of their Constitutional rights. The District is not challenging Plaintiffs' equal protection claims; rather, it asserts that the District is not liable for the constitutional violations. Municipalities are liable under §1983 when a deprivation of rights is caused by a municipal policy or custom. *See Kujawski v. Board of Comm'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir. 1999), *citing Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal policies can be established any of three ways: (1) proof of an express policy causing the loss; (2) a widespread practice constituting custom or usage that caused the loss; or (3) causation of the loss by a person with final policymaking authority. *McTigue*

*v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Plaintiffs here rely on the third method to establish liability.

The District incorrectly asserts in its Motions to Dismiss that Plaintiff has not sufficiently alleged causation by a person with final policymaking authority. In fact, Plaintiffs' Complaint alleges that Principal Grindle is a final policymaker who caused the harm to Plaintiffs based on the authority to make final policy decisions to end the ongoing abuse, yet affirmatively refused to do so or to even notify parents or DCFS about the abuse.

The District is wrong that a principal cannot be a final policymaker under Illinois law. The question of who is a final policymaker is an issue of state law that relies on a factual review of actual practice, custom or usage. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Kujawski v. Bd. of Comm'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir.1999). In order to have final policymaking authority, an official must possess "[r]esponsibility for making law or setting policy." *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (citation omitted). The authority to make municipal policy may be delegated. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). To determine if a municipality delegated policymaking, a court reviews the customary practices having the force of law. *Kujawski*, 183 F.3d at 737.

In short, there may be a *de facto* delegation of power that can be shown through custom. *Id.* at 739 (denying summary judgment based on sufficient factual claims that employee's decisions were never reviewed, employee claimed to be in charge, and set personnel policy for municipal department). *See also Brogan v. Bd. of Ed. of the City of Chicago*, 152 F. Supp. 2d 1082, 1083-1084 (N.D. Ill. 2001) ("when the [complaint] here alleges that the action of which Brogan complains represented the conduct of policymakers, those averments must be taken as gospel for Rule 12(b)(6) purposes"). Plaintiffs have further alleged, and are entitled to pursue the allegation through discovery, that other

policymakers were involved in the policy of deceiving the parents of Berwyn to hide the fact that the District harbored a predator.

Here, Plaintiffs allege that Grindle is a policymaker, an allegation with all reasonable inferences that must be taken as true for purposes of a motion to dismiss. In fact, the District delegated control over the school and Sperlik's conduct in the school to Defendant Grindle. Grindle was the District's policymaker who issued a mere reprimand to a man who sexually abused multiple students. There is a sufficient inference that Grindle's decision was not subject to review by the District and that Grindle was the policymaker for controlling Sperlik's conduct. Grindle's slap on the wrist for ongoing abuse by Sperlik therefore was the final policy decision on the subject. Moreover, Grindle's outright misrepresentation to the parents of students under her control about Sperlik's predatory conduct was the final policy decision on the subject for the District. Finally, Grindle's decision not to report Sperlik's deviant conduct with his young female students to DCFS or the police constituted the final decision for the District.

Contrary to the District's claims, there is no *per se* rule in Illinois that a principal is not a policymaker for purposes of establishing municipal liability in a § 1983 claim. *See Brogan v. Bd. of Ed. of the City of Chicago*, 152 F. Supp. 2d 1084, 1085-1086 (N.D. Ill. 2001). In *Brogan*, the court denied the school district's motion to dismiss that was based on the same argument asserted by District here. The court in *Brogan* noted, "When the [complaint's] allegations are taken as true, as they must be at this point, Hartung must be viewed as a policymaker subject to Section 1983 liability (parenthetically, a statement that is equally applicable to the [Principal])." *Id.*

In its Motions, the District urges the opposite conclusion, relying on cases that are easily distinguished, for its claim that a principal cannot be a policymaker. The cases of *Horwitz v. Bd. of Ed. of Avoca Sch. Dist. No. 37*, 260 F.3d 602 (7th Cir. 2001); *Duda v. Bd. of Ed. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998); and

9

*Thompson v. Community Unit Sch. Dist. 200*, 2003 WL 1921816, *5 (N.D. Ill. 2003), are all employment discrimination cases in which the courts expressly noted that the principals there had no authority over the hiring and firing decisions that were at issue. Those issues are not present here, however. Rather, the policymaking decision that is being reviewed here concerns a principal's control over a teacher within her school. Moreover, in *Horowitz* and *Thompson*, the courts were able to make the determination about whether the principals were policymakers only after discovery.

The District claims that only the Board of Education can be a policymaker for a school. That simplistic analysis ignores the realities of governance, which relies extensively on delegation of policymaking. Courts have recognized this fact and concluded that analysis about customs and practices of policymaking are necessary to determine municipal liability.

At this stage, Plaintiffs are entitled to all reasonable inferences in their favor, including the inference that Defendant Grindle and other unknown policymakers were final policymakers that caused the constitutional deprivation here. Accordingly, Plaintiffs' allegations that Defendant Grindle and other policymakers caused the equal protection violations state a viable claim for liability against the District under 42 U.S.C. § 1983, and the District's motions to dismiss Count I against it must fail.

2. **Count III should not be dismissed because there is a reasonable inference that Sperlik's abuse occurred in the course of his employment.**

The District urges that it cannot be held liable under *respondeat superior* for any sexual abuse of Plaintiffs, so Count III should be dismissed. While the District is correct that sexual abuse *per se* is not actionable against an employer because it is outside the course of employment, Plaintiffs' assault and battery claim is not just limited to sexual abuse. Rather, Plaintiffs allege that Sperlik's conduct "constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing [Plaintiffs'] injuries." Complaint, ¶ 45. While that allegation necessarily includes the sexual abuse claims, it also includes

10

conduct that may have been related to Sperlik's duties as a teacher. Plaintiffs are entitled to all reasonable inferences that the assault and battery claims encompass more than sexual abuse at this stage. Accordingly, the District's motions to dismiss Count III should be denied.

### 3. The District is not immune from Plaintiffs' claims that it negligently retained and failed to supervise Defendant Sperlik.

Plaintiffs' abuser was the District's employee. The District specifically allowed Sperlik private access to young girls, even after being on notice that Sperlik was using that access to fulfill his illicit interests. Accordingly, Plaintiffs include a claim that the District negligently retained Sperlik as its employee and failed to supervise his activities as its employee. The District is not entitled to immunity for those claims.

Illinois courts have sanctioned claims against school districts for negligent supervision of their employees. *Mueller v. Consolidated Sch. Dist. 54*, 287 Ill. App. 3d 337, 678 N.E.2d 660 (1st Dist. 1997). Here, Plaintiff properly pled the elements of negligent supervision of its employee. Moreover, Plaintiffs' claim for negligent retention is not subject to immunity.

The District incorrectly cites to 745 ILCS 10/3-108 to support its assertion that it is immune. That statute expressly grants immunity only in claims involving allegations that the municipality failed to properly supervise an activity or locale. *Doe v. Domovski*, 336 Ill. App. 3d 292, 298, 783 N.E.2d 193 (2nd Dist. 2003).

Regardless, that immunity does not apply in cases in which the municipality's conduct is willful or wanton such as when the district ignores a known threat. *Ortega-Piron v. Chicago Bd. of Ed.*, 213 Ill.2d 19, 29 820 N.E.2d 418 (2004). Here, there is a reasonable inference that the District's conduct was willful or wanton given that its employee has been charged with over 240 counts of abusing girls on school property during school activities.

Finally, the District's failure to report abuse that it had notice of strips it of any such immunity. *See Doe v. Domovski*, 336 Ill. App. 3d 292, 783 N.E.2d 193 (2nd Dist. 2003)

11

(denying immunity under 745 ILCS 10/2-201 and 10/3-108). In *Domovski*, the court concluded that the board of education had constructive knowledge about ongoing sexual abuse so that it was not entitled to immunity for not reporting it. *Id.* at 295-298.

Similarly, the District's citation to 745 ILCS 10/2-201 does not support its claim. That section generally defines immunity conferred on discretionary decisions but does not extend that immunity to failure to supervise an employee who the District is or should be aware is abusing students because its failure to report sexual misconduct of its teacher is not a discretionary function. *Doe v. Bd. of Ed. of Conslidated Dist. 230*, 18 F. Supp. 2d 954, 962 (N.D. Ill. 1998) (mandatory duty to report abuse so that it is not a discretionary decision); *see also Domovski*, 336 Ill. App. 3d 292, 783 N.E.2d 193. Plaintiffs are entitled to an inference here that the District was under at least constructive notice of the 243 counts of abuse against girls within its schools so that it cannot claim government tort immunity for its failure to report Sperlik's abuse.

The District fails to cite to any decision that supports its contention that a school district is immune from negligent retention/supervision of an employee who sexually abuses dozens of young girls in the district's classrooms. Rather, it cites to various hiring/firing cases that do not apply to Plaintiff's claims. *Johnson v. Mers*, 279 Ill. App. 2d 372, 664 N.E.2d 668 (2nd Dist.1996), dealt with negligent hiring, a claim that is not raised by Plaintiffs here. Negligent hiring is significantly different than negligent supervision and retention. In the hiring context, a municipality has much less opportunity to be on notice of misconduct. Conversely, a municipality is more likely to have actual or constructive notice of misconduct in the context of supervising and retaining an employee. Finally, the District cites to *Ellis v. City of Chicago*, 272 F. Supp. 2d 729 (N.D. Ill. 2003); *Hanania v. Loren-Maltese*, 319 F. Supp. 2d 814 (N.D. Ill. 2004); and *Cross v. City of Chicago*, 352 Ill. App. 3d 1, 815 N.E.2d 956 (1st Dist. 2004), for the proposition that decisions to fire are discretionary acts subject to

immunity. All of those cases were claims by fired employees and are factually distinct from the issues here.

In footnote 1, the District urges that it is also immune under the School Code. In fact, the school code provisions cited by the District relate only to negligent school discipline of students and do not extend immunity to the District here. *Arteman v. Clinton Comm. Unit Sch. Dist. No 15*, 198 Ill. 2d 475, 480-482, 763 N.E.2d 756, 761-762 (2002); *Ortega-Piron v. Chicago Bd. of Ed.*, 339 Ill. App. 3d 848, 853-854, 791 N.E.2d 1283(1st Dist. 2003) *aff'd* 213 Ill.2d 19, 820 N.E.2d 418 (2004).

The District is not immune for its conduct here. Accordingly, its motions to dismiss must fail.

### 4. Plaintiffs maintain viable claims against the District in Count VI under *respondeat superior* for intentional infliction of emotional distress.

For the same reason stated above concerning Count III, Plaintiffs' claims against the District under the doctrine of *respondeat superior* for intentional infliction of emotional distress are proper and should not be dismissed.

### 5. Plaintiffs' claim for premises liability should not be dismissed.

Illinois Courts recognize that the tort of premises liability attaches to schools for its properties. *Rexroad v. City of Springfield*, 207 Ill.2d 33 (2003). Immunity from premises liability extends only to claims arising from conditions in gymnasiums, playgrounds and sidewalks intended to be used for recreational purposes within school grounds. *Rexroad*, 207 Ill. 2d at 42. Hence, there is no statutory immunity extended to the District for maintaining the dangerous condition of its secluded classroom that was used by a predatory pedophile.

Not surprisingly, therefore, the District fails to cite to a statute supporting its immunity theory. That is because the Tort Immunity Act authorizes actions based on deficiencies in the operation of premises:

> Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition

13

> for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.

745 ILCS/10/3-102(a). Plaintiffs' Complaint sufficient alleges the elements necessary to state a claim for premises liability. Plaintiffs allege that the District did not maintain its property in a reasonably safe condition for use by its young female students who were attending school and enrolled in the District's band classes. The District maintained a private room that allowed Sperlik to prey on girls even after it had actual or constructive notice that Sperlik was using that secluded spot for illicit purposes. Therefore, the District is not entitled to immunity from its failure to exercise ordinary care.

Nor does it matter that the harm caused to Plaintiffs stem from criminal acts. A school can be held liable for criminal acts of others if its premises facilitated the criminal acts or if it had unique knowledge about the possibility of future criminal acts. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 640 (1st Dist. 1996). Plaintiffs have alleged both of those conditions here.

The District cites to *Sameer v. Butt*, 343 Ill. App. 3d 78 (1st Dist. 2003), claiming that Plaintiffs must allege a special relationship and that the "criminal attack was reasonably forseeable." District's Brief at 10. *Sameer* does not apply given the line of cases concerning public entities. Regardless, as noted above, Illinois statutory law allows for premises liability claims without the requirement of a special relationship so the District's assertion that a special relationship is required is incorrect (as is its reference to *Zimmerman*). Even if a special relationship were required, Plaintiffs have alleged the existence of a special relationship. Similarly, the second prong of the test in *Sameer* does not apply here. Rather, the proper test for premises liability based on criminal acts is either that the premises

facilitates the crime or the public entity has unique knowledge of future criminal acts. Plaintiffs have properly alleged both elements, as well as any element of knowledge that would be required by *Sameer* if it applied here.

Finally, in footnote 2, the District accuses Plaintiffs of being "inefficient and intellectually dishonest" because they assert the premises liability claim. Seemingly, it bases this accusation on its assertion that Plaintiffs should have instead alleged a claim under a *respondeat superior* theory. That position is curious given that the District seeks to have Plaintiffs' *respondeat superior* claims dismissed under its theory that Sperlik's conduct did not occur in the course of his employment and, presumably, he was not under the control of the District. The District's shifting positions about whether it controlled Sperlik's abuse supports Plaintiffs' need to include both *respondeat superior* and premises liability claims here. Therefore, the District's analysis under *Hills v. Bridgeview Little League Assn.*, 195 Ill. 2d 210 (2000), is not helpful here.

Plaintiffs present viable claims in Count VII for premises liability. Accordingly, the District's motions should be denied.

### 6. The District is not immune from Plaintiffs' special duty claims.

The District asserts immunity for Plaintiffs' special duty claims for the same reason it asserts immunity from Plaintiff's negligent retention/supervision claims. The District is correct that Illinois courts have held that special duty claims cannot be brought if statutory immunity exists, but that begs the question of whether there is immunity.

As noted above, in cases like here, courts have held that immunity does not shield school districts from their failure to protect children from predatory pedophiles like Sperlik. *Ortega-Piron v. Chicago Bd. of Ed.*, 213 Ill.2d 19, 29 820 N.E.2d 418 (2004) (failure to protect student from known threat is wanton and wilful); *Doe v. Domovski*, 336 Ill. App. 3d 292, 783 N.E.2d 193 (2nd Dist. 2003) (no immunity under 745 ILCS 10/2-201 and 10/3-108

because school board is statutorily required to report abuse). *Doe v. Bd. of Ed. of Conslidated Dist. 230*, 18 F. Supp. 2d 954, 962 (N.D. Ill. 1998) (duty to report abuse is mandatory, thus not a discretionary decision).

In contrast to those decisions, the cases the District cites do not apply here. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 697 N.E.2d 699 (1998), dealt with an inmate who sued in relation to his confinement, and the immunity issue dealt with whether a special duty exception allowed the suit regardless of immunity. Similarly, in *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 692 N.E.2d 1177 (1998), the court concluded that special duty claims are not viable since statutory immunity exists for fire drills, which was the cause of Plaintiff's injuries. The District's other cited cases are equally unavailing. *Floyd v. Rockford Park District*, 823 N.E.2d 1004 (2nd Dist. 2005), dealt with whether a child could assert a claim when he was hit with a golf club by another child in a park district program, even though the park district was not on notice about the possibility of that conduct. Here, Plaintiff is entitled to the reasonable inference that the District was on notice of the extensive abuse by Defendant Sperlik.

The District is not entitled to immunity from Plaintiffs' special duty claims. Accordingly, its motions to dismiss Count VIII should be denied.

### IV. CONCLUSION

The District's Motions to Dismiss have no merit. For Count I, Plaintiffs have sufficiently alleged that the District's policymakers caused the equal protection violations. Count III encompasses assault and battery that includes activities in the course of Defendant Sperlik's employment. Regarding Count V, the District is not immune from Plaintiffs' claim for negligent retention/supervision. In Count VI, Plaintiffs bring viable claims against the District under *respondeat superior* related to the intentional infliction of emotional distress, which is properly premised on conduct that was done in the course of Sperlik's employment.

Regarding Count VII, under Illinois law, the District is not immune from Plaintiff's premises liability claim. Finally, Count VIII properly alleges that the District violated a special duty, and the District is not shielded by immunity from that claim.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Mark Reyes
LOEVY & LOEVY
312 N. May, Suite 100
Chicago, IL 60607
(312) 243-5900