IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA T.E. AND RUFUS T.E., on their own behalf and as next friend forC.E., a minor child<br><br>Plaintiffs<br><br>v.<br><br>ROBERT SPERLIK, PRINCIPAL KAREN GRINDLE, AND S. BERWYN SCH. DIST. 100,<br><br>Defendants. | No. 05 C 473<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

In January 2005, Robert Sperlik confessed to molesting many of his 11- and 12-year-old female students and tying them to desks with duct tape. Sperlik, who at the time was a music teacher in the South Berwyn School District, molested numerous girls between 1999 and 2003. Although many of the girls complained to the principal, the school district never removed Sperlik from the classroom. Many of Sperlik's victims have now sued South Berwyn School District 100 (the District), Principal Karen Grindle, and other District personnel. These Defendants move to dismiss several of the counts against them.

### I. Factual Background

In resolving the motions to dismiss, the Court takes as true the following facts from the Plaintiffs' complaints. The Plaintiffs are several of numerous victims of Robert Sperlik, a teacher in the District. Sperlik used his position as a grammar school band instructor to provide one-on-one instruction to students in a school office and the District also allowed him to instruct students in the

1

basement of his home. Sperlik admitted to molesting young girls, all under the age of thirteen, and tying them up with duct tape during the abuse. Sperlik now faces 243 criminal counts related to the abuse of his students, including charges of solicitation and aggravated kidnapping.

In 1999, several of Sperlik's victims complained, in writing, to Principal Grindle about Sperlik's abuse, noting particularly that Sperlik tied them with duct tape and molested them. But Grindle, rather than informing the victims' parents of the allegations, lied and told the victims' parents only that Sperlik had inappropriately touched the victims' knees and hair. Further, the parents of at least one victim requested to see the letter written by the students, but Grindle refused the request. The complaints universally allege that Grindle *and the District* took no other steps to halt Sperlik's abuse. Even when victims continued to come forward, the District only reprimanded Sperlik (in 2001 and 2002) for benign, non-sexual, "inappropriate touching" and instructed him to keep his door open if he met with students.

In 2005, one of Sperlik's victims, who at the time was 15 years old, convinced her parents that Sperlik had sexually abused her over 5 years ago. The victim's parents then informed the police of the allegations, and shortly thereafter Sperlik was arrested.

II.

Before proceeding to the merits of the District's Motions, a brief note is in order. One Plaintiff's First Amended Complaint, Jane Doe #1, 05 C 1277, is nearly unintelligible. Under Federal Rule of Civil Procedure 8, a complaint "'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Vicom v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) (citations omitted). Here, the problem with Plaintiff Jane Doe #1's First Amended Complaint is that the Court is wholly unable

to discern which claims are asserted against which parties. A brief example should suffice to demonstrate the problems with the complaint. Count IV is labeled "BATTERY (SPERLIK)." The District moves to dismiss Count IV, arguing that it cannot be held responsible for Sperlik's actions under a theory of *respondeat superior*. In response, Plaintiff Jane Doe #1 suggests that she has pleaded "the causes of action *directly against* each Defendant" and that the Court should look only at "allegations in Count IV against Defendant District." But the label of Count IV suggests that the Plaintiff alleges a claim only against Sperlik. Plaintiff Jane Doe #1 goes on to argue that Count IV alleges that the District knew of Sperlik's abuse and had a duty to report the abuse, but failed to do so. But while those allegations might suggest the District is liable for failing to supervise Sperlik, those allegations do not support a claim that the District is liable to the Plaintiff for Battery. In short, Plaintiff Jane Doe #1 consistently mixes multiple claims within each Count and also fails to clearly identify which claims are brought against which Defendants. The Court directs Plaintiff Jane Doe #1 to file a Second Amended Complaint, consistent with this opinion, that complies with the requirements of Rule 8.

III. The District's Motions[1]

The District first moves to dismiss the Plaintiffs' 42 U.S.C. § 1983 claims (generally Count I of the Plaintiffs' various complaints). The District argues that Plaintiffs have not alleged that the constitutional deprivation was caused by an express policy, a widespread practice that had become

---

[1] Although the Plaintiffs' claims are, for the most part, similar, not all Plaintiffs have pleaded precisely the same claims. Unless otherwise specifically noted, for convenience's sake, the Court refers to the Plaintiffs collectively. Where only certain of the Plaintiffs have pleaded claims, the Memorandum Opinion and Order applies only to those Plaintiffs and should not be construed as granting Plaintiffs leave to amend their Complaints in order to include any previously omitted claims.

3

policy, or a person with final policymaking authority. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978); *McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995). The District relies primarily on *Duda v. Franklin Park Pub. Sch. Dist. 84*, 133 F.3d 1054 (7th Cir. 1998) to suggest that Plaintiffs cursory allegation that Grindle enjoyed final policymaking authority is insufficient to withstand a motion to dismiss.² It is true that *Duda* suggests that a Plaintiff need to do more than make a bare allegation that a principal is a final policymaker to show that the District has delegated its decisionmaking authority. *Duda*, 1333 F.3d at 1061. But the Court need not even go so far as to determine whether Plaintiffs have sufficiently alleged that the District delegated its policymaking authority to Grindle. Plaintiffs are not required by Rule 8 to plead specific facts — and a complaint survives a 12(b)(6) motion if any set of facts may be proved consistently with the allegations that will keep the plaintiff in court. *Brogan v. Bd. of Educ. of City of Chi.*, 152 F. Supp. 2d 1084, 1086 (N.D. Ill. 2001). Further, plaintiffs are entitled to all reasonable inferences that can be drawn from the pleadings. *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726 (7th Cir. 2005).

In this case, the Plaintiffs here have alleged that: 1) several students complained in writing to Grindle in 1999 about Sperlik's abuse; 2) Sperlik was reprimanded in 1999, 2001, and 2002 for "inappropriate touching"; and 3) the *District* did nothing to prevent Sperlik's continued abuse. Consistent with these allegations, the Plaintiffs could prove that Grindle placed the students' letter complaining about Sperlik into his personnel file — which would have given the District's Board (which does have final policymaking authority) notice of Sperlik's behavior. Further, it is reasonable

---

² Many of the other cases cited by the Defendant involve decisions at the summary judgment stage of the proceedings, which are not helpful here.

4

to infer from the fact that Sperlik was reprimanded three times in a four year period for "inappropriate touching" should have raised more than a tiny red flag, and made the Board aware of the allegations against Sperlik. If Plaintiffs can prove that the Board had knowledge of the serious allegations made by the girls in the 1999 complaint and of the three reprimands for "inappropriate touching" that were part of Sperlik's personnel file, they may also be able to prove that the Board's failure to investigate Sperlik or do *anything* (call the police, notify the parents, remove Sperlik from his position, to name a few) to prevent future abuse directly contributed to the constitutional deprivations suffered by the Plaintiffs. The Court finds that Plaintiffs have adequately pleaded that their injuries were caused by an official with final policymaking authority, and the District's motions to dismiss the Plaintiffs' § 1983 claims are DENIED.[3]

Next, the Defendants argue that the Plaintiffs' two *respondeat superior* claims for battery and intentional infliction of emotional distress (generally Counts III and VI) are not actionable. *Respondeat superior* liability hinges upon a finding that the employee acted in furtherance of his employer's interest when committing the acts complained of. *Bates v. Doria*, 502 N.E.2d 454, 457 (Ill. App. Ct. 1986). Illinois has consistently held that acts of sexual misconduct are *per se* unrelated to any employer's business. *Delony v. Bd. of Educ. of Thornton Township*, 666 N.E. 2d 792, 797-98 (Ill. App. Ct. 1996); *Randi F. v. High Ridge Y.M.C.A.*, 524 N.E.2d 966, 968 (Ill. App. Ct 1988). Plaintiffs argue that their battery and intentional infliction of emotional distress claims involve acts unrelated to Sperlik's sexual misconduct, and therefore are actionable against the District under the theory of *respondeat superior*. The Court disagrees. When the motive for an employee's intentional

---

[3] The Court has considered the preemption argument belatedly raised by the Defendants and found it unconvincing. *See Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, No. 04 C 8250, 2005 WL 910732, * 3-4 (N.D. Ill. Apr. 13, 2005).

tort is personal (which Sperlik's actions certainly were), it is necessarily unrelated to his employer's objectives. *Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 635 (7th Cir. 2005); *see also Rosenberg v. Packerland Packing Co.*, 370 N.E.2d 1135, 1238-39 (Ill. App. Ct. 1977) (disallowing plaintiff to proceed under theory of *respondeat superior* for employee's intentional infliction of emotional distress because such acts fell outside the scope of his employment); *Rubin v. Yellow Cab Co.*, 507 N.E.2d 114 (Ill. App. Ct. 1987) (no cause of action for battery against the employer under the *respondeat superior* doctrine). Because Sperlik's intentional torts were outside the scope of his employment, Plaintiffs cannot press claims against the District under the *respondeat superior* doctrine, and the Plaintiffs' assault and battery and intentional infliction of emotional distress claims against the District are DISMISSED WITH PREJUDICE.

The District next argues that the Plaintiffs' negligent supervision and negligent retention claims are barred by the Illinois Tort Immunity Act (TIA). *See* 745 ILCS 10/1-101 *et seq.* According to the District, Section 2-201 shields it from Plaintiffs' negligent retention claims because any decision to retain Sperlik is a discretionary decision. *See* 745 ILCS 10/2-201. Plaintiffs make no real argument that Section 2-201 does not bar any negligent retention claims and those claims are dismissed with prejudice. Plaintiffs instead focus their arguments on the District's claim that Section 3-108 bars their negligent supervision claims. According to the District, Section 3-108 of the TIA shields it from Plaintiffs' negligent supervision claims because Plaintiffs' claims sound strictly in negligence. To the extent that Plaintiffs' attempt to bring claims sounding in negligence against the District, Section 3-108 bars those claims. But the Plaintiffs' negligent supervision claims do not sound strictly in negligence. Most of the Plaintiffs' claims include a paragraph that alleges that the District failure to supervise Sperlik was willful and wanton. Further, the Plaintiffs' claims also

include an allegation that, despite knowledge of Sperlik's actions, the District refused to take any steps to prevent him from abusing students and incorporate by reference an allegation that the District failed to report Sperlik's actions to the Department of Children and Family Services, as required by law. The TIA does not immunize conduct that is willful and wanton. 745 ILCS 3-308; *Ortega-Piron v. Chicago Bd. of Educ.*, 820 N.E.2d 418 (Ill. 2004). Further, Illinois courts have sanctioned claims based on a failure by the school district to report or investigate sexual misconduct of a teacher. *Doe v. Dimovski*, 783 N.E. 2d 193, 200 (Ill. App. Ct. 2003). Although the Plaintiffs' claims are without doubt not worded as clearly as they might be the Court finds that Plaintiffs' have successfully pleaded the elements of a willful and wanton conduct by the District.[4] Consequently, the District's motion to dismiss Plaintiffs' negligent supervision claims are DENIED.[5]

The District next argues that the Plaintiffs' claims for premises liability should be dismissed because it is nothing other than a reallegation of the Plaintiffs' negligent supervision claims and because the Plaintiffs' cannot allege a special relationship between the District and the Plaintiffs. The Court disagrees. The Tort Immunity Act codifies the common law duty of public entities to maintain their property in a reasonably safe condition. *See* 745 ILCS 10/3-102(a); *Lawson v. City of Chi.*, 662 N.E.2d 1377, 1386 (Ill. App. Ct. 1996). The TIA provides that a public entity is liable for its failure to exercise ordinary care to maintain its property in a reasonably safe condition if it has actual or constructive notice of a condition that is not reasonably safe in a reasonably adequate time

---

[4] Further, as noted *infra*, the special duty doctrine provides an exception to the Tort Immunity Act.

[5] The District raises an argument in a footnote that certain sections of the School Code also grant it immunity from Plaintiffs' negligent supervision claims. The District's cursory argument is not convincing.

before the injury occurs. 745 ILCS 10/3-102(a). Although generally there is no liability for the criminal acts of third persons, a defendant can be liable for the criminal acts of third persons where the condition of the premises prompted or facilitated the criminal act or where the defendant has unique knowledge regarding the possibility of future criminal acts. *Lawson*, 662 N.E.2d at 1386. Plaintiffs have alleged both conditions here: 1) the Plaintiffs allege that the private room given to Sperlik directly contributed to and facilitated the abuse; 2) the Plaintiffs allege that the District had actual knowledge that Sperlik was utilizing the private room to commit the abuse. The Plaintiffs do more than simply repackage their negligent supervision claims. The gravamen of the Plaintiffs' premises liability claim is not that the District failed to supervise Sperlik. Instead, the gravamen of the premises liability claims is that the District knew that Sperlik was using a private room to facilitate his abuse of his students and that it had unique knowledge that allowing Sperlik to have access to a private room increased the danger to its students, yet did nothing (for instance, deny Sperlik access to that room) to ensure that the premises were made safe. The District's motion to dismiss the Plaintiffs' premises liability claims is DENIED.

The District also moves to dismiss the special duty claims. However, the District's motion is premised on its belief that it is immune from the Plaintiff's negligent supervision claims. But this premise reflects a flawed understanding of the special duty doctrine. The special duty doctrine serves as a vehicle to overcome municipal immunity. *See Leone v. City of Chicago*, 619 N.E. 2d 119, 121 (Ill. 1993); *McElmeel v. Village of Hoffman Estates*, 853 N.E.2d 183, 186 (Ill. App. Ct. 2005). When a plaintiff successfully demonstrates that a defendant owes an injured party a special duty, a plaintiff can recover against a municipality in a negligence claim. *Leone*, 619 N.E. 2d at 121. In other words, the special duty doctrine provides an avenue for Plaintiffs to overcome the District's

immunity under the TIA and to prove that it is liable for negligent supervision even without demonstrating willful and wanton conduct. However, the special duty exception is not a stand-alone claim, but an exception allowing plaintiffs to proceed where they are otherwise barred by a claim of immunity. Accordingly, the Court strikes the Plaintiffs' special duty claims as independent claims, but each numbered paragraph is considered to be reincorporated to the complaints.

Finally, one Plaintiff, Janet Roe, 05 C 4573, includes a claim that the District (and other Defendants) violated the Illinois Civil Rights Act, 740 ILCS § 23/5(c)(2). Section 23/5(c)(2) of the Illinois Civil Rights Act allows a plaintiff to recover attorney's fees after successfully enforcing a right arising under the Illinois Constitution. The District argues that the sections of the Illinois Constitution cited or referenced by Plaintiff Janet Roe (Article I, sections 2, 6, and 18) do not contain self-executing language. *See Teverbaugh v. Moore*, 742 N.E. 2d 225 (Ill. App. Ct. 2000); *Ingram v. Jones*, 95 C 2631, 1995 WL 745849 (N.D. Ill. Nov. 29, 1995). Plaintiff Janet Roe fails to respond to this argument and appears to have abandoned her claim under the Illinois Civil Rights Act. Consequently, the District's Motion to Dismiss Plaintiff Janet Roe's Illinois Civil Rights Act claim is GRANTED and Plaintiff's ICRA claims are dismissed with prejudice as to all defendants.

## IV. Grindle's Motion

Grindle first moves to dismiss Plaintiffs' Equal Protection claims and their Illinois Civil Rights Act claims, arguing that Plaintiffs do not allege that Grindle treated the Plaintiffs differently because of their inclusion in an identifiable and constitutionally protected group. The Court disagrees. In their complaints, the Plaintiffs universally allege that Grindle treated them differently because of their gender and that this treatment was intentional. Grindle argues that Plaintiffs have pleaded "no facts that suggest that Grindle . . . took the actions that [she] did as a result of [the

Plaintiffs'] inclusion in some identifiable and constitutionally protected group." Rule 8, however, requires *notice* pleading, not fact pleading. Fed. R. Civ. P. 8. Under Rule 8, a plaintiff need not plead all of the elements of her claims or all of the facts necessary to support them. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166-67, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir.2002). Rather, a complaint need only contain a "short and plain statement" that gives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Plaintiffs' complaints allege that Grindle knew about Sperlik's abuse and did nothing to stop it, and that she failed to take action because the Plaintiffs' were female. These allegations, which must be accepted as true for the purposes of this motion, more than meet the requirements of Rule 8, and Grindle's motion to dismiss is DENIED.[6]

Grindle next argues that Plaintiffs' claim for gender discrimination under Title IX, 20 U.S.C. § 1681(a), should be dismissed because it can only be brought against a recipient of federal grant money. *Boulahanis v. Board of Regents*, 198 F.3d 633, 640 (7th Cir. 1999); *Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014 (7th Cir. 1997). Plaintiffs agree, and all Title IX claims against Grindle, in her individual capacity, are DISMISSED with prejudice.

---

[6] Grindle also argues that, to the extent Plaintiffs argue that Grindle is liable in her official capacity, the Plaintiffs' equal protection claims should be dismissed because she is not an official policymaker. None of Plaintiffs' complaints makes clear whether the allegations against Grindle are brought against her in her individual capacity or her official capacity, or both. However, a suit against Grindle in her official capacity is, in essence, a suit against the District. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997). To the extent that Grindle raises objections to claims against her in her official capacity, the Court's ruling regarding the District's motion to dismiss shall apply.

Grindle also argues that Plaintiffs' negligent supervision and retention claims should be dismissed because only employers are liable for negligent supervision and retention. *See Van Horne v. Muller*, 691 N.E. 2d 74, 79 (Ill. App. Ct. 1998). The Plaintiffs argue that Grindle supervised Sperlik in her official capacity. As noted earlier, a suit against Grindle in her official capacity is, in effect, a suit against the District, and the Court's ruling with regard to the District's motion to dismiss applies to any claims brought against Grindle in her official capacity. To the extent that Plaintiffs' negligent supervision and retention claims are raised against Grindle in her individual capacity, those claims are DISMISSED with prejudice.

Finally, Grindle moves to dismiss Plaintiffs' intentional infliction of emotional distress against her. According to Grindle, Plaintiffs have not alleged conduct that is sufficiently egregious to state a claim of intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege that: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended that her conduct would inflict severe emotional distress or knew that there was a high probability that it would; and 3) the defendant's conduct actually caused severe emotional distress. *Tuite v. Corbitt*, 830 N.E.2d 779, 789 (Ill. App. Ct. 2005). Illinois courts have recognized that sexual misconduct can form the basis of an intentional infliction of emotional distress claim. *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003); *Parks v. Kownacki*, 737 N.E.2d 287 (Ill. 2000); *Pavlik v. Kornhaber*, 761 N.E. 2d 175 (Ill. App. Ct. 2001). Grindle suggests that the only allegations against her were that she received a letter from one of the Plaintiffs and as a result of that letter reprimanded Sperlik and directed him not to touch other students, and that Plaintiffs' claims against her amount to little more than a criticism of her judgment in how she responded to allegations against Sperlik. But Grindle's characterization of the allegations against

her are inaccurate, to say the least. Among the more serious allegations against Grindle is that, despite the victims' letter expressly stating that Sperlik had bound the girls with duct tape and sexually assaulted them, she chose to *falsely* inform the victims' parents that Sperlik had only inappropriately touched their hair and knees. Further, Plaintiffs allege that multiple children complained to Grindle that Sperlik was sexually assaulting them and yet, despite repeated complaints over a period of years, Grindle did nothing to protect the girls form Sperlik's misconduct. The gravamen of Plaintiffs' complaints is that Grindle facilitated Sperlik's abuse by purposefully covering up the abuse and by lying about its severity when students complained. Deliberate indifference to repeated complaints of sexual misconduct can form the basis for an emotional distress claim. *See Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, No. 04 C 8250, 2005 WL 910732, * 5 (N.D. Ill. Apr. 13, 2005).[7] The Court finds that Plaintiffs have stated a claim for intentional infliction of emotional distress and Grindle's motion to dismiss is DENIED.

Generally, Illinois courts have held that a victim's parents do not have a claim for negligent infliction of emotional distress unless they were in the "zone of physical danger" at the time of injury. *Calhoun v. Jumer*, 686 N.E.2d 406, 407 (Ill. App. Ct. 1997) (citing *Rickey v. Chicago Transit Authority*, 457 N.E.2d 1 (Ill. 1983)). The *Calhoun* court, however, left open the possibility that parents may have a cause of action for emotional distress when they entrust the care of a child to

---

[7]Grindle attempts to distinguish *Woodridge* by suggesting that parents did not complain about Sperlik's abuse. But numerous students did, and (as Plaintiffs repeatedly allege) rather than honestly conveying these reports to the parents, Grindle lied to the parents about the severity of Sperlik's alleged behavior. If anything, Grindle's alleged conduct is *more* extreme and outrageous than the conduct alleged in *Woodridge*, and her argument to the contrary is unconvincing.

another and that person sexual assaults the child. *Id.* at 408.[8] Nevertheless, the *Calhoun* court remained skeptical of expanding the tort of intentional infliction of emotional distress, and given this reticence, the Court holds that only the child victims, and not their parents, have a claim for emotional distress against Grindle.

Finally, Grindle moves to dismiss the special duty claims against her. As noted earlier, the special duty doctrine is not a stand-alone claim, but an exception to municipal liability, and to that extent the Court's ruling regarding the District shall apply to Grindle.

V. Pickunas's and Kaiser's Motion

Plaintiff Janet Roe also brings claims against two additional principals, Diane Pickunas and Chuck Kaiser. The Court's ruling with regard to Grindle's motion to dismiss applies equally to Pickunas and Kaiser, and the Court need only add one brief comment — Plaintiff Janet Roe's intentional infliction of emotional distress claim. Defendants Pickunas and Kaiser argue that Plaintiff Janet Roe has not stated a claim for intentional infliction of emotional distress because there are "no allegations at all of any underlying conduct committed by either Pickunas or Kaiser" and that Plaintiff instead focuses on the knowledge of Grindle and the District. It is true, that Plaintiff's complaint is sparse. But under Rule 8, a Plaintiff need not plead facts. Plaintiff Janet Roe alleges that Pickunas and Kaiser were informed of Sperlik's sexual misconduct and that they actively concealed knowledge of that abuse from the plaintiffs. As noted earlier with regard to Grindle's

---

[8] The Illinois Supreme Court has not spoken on the issue raised by *Calhoun*, and the issue of whether parents can state a claim for emotional distress when they entrust the care of their children to another who sexually assaults the children remains an issue of first impression. Illinois Supreme Court Rule 20(a) allows only the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit to certify a question to the Illinois Supreme Court. Ill. S. Ct. R. 20(a).

motion, the allegation that by concealing Sperlik's abuse, Pickunas and Kaiser facilitated it and in so doing caused Plaintiff Jane Roe emotional distress is sufficient to withstand a motion to dismiss.

IT IS SO ORDERED

11/30/05
Dated

The Honorable William J. Hibbler
United States District Court