IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA T.-E., *et al.* | ) | |
| | ) | 05 C 473 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT SPERLIK, *et al.* | ) | Judge Hibbler |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT
SCHOOL DISTRICT TO PRODUCE ITS INVESTIGATION OF PLAINTIFF'S CLAIMS**

Plaintiffs, C.E., M.K., K.B., A.S., R.B., R.A., and T.A., by and through their parents and

next friends, by their attorneys, LOEVY & LOEVY, under Fed. R. Civ. P. 37, reply in support of

their motion to compel the production of the District's investigation about how its administrators

allowed Sperlik to abuse dozens of girls. In support of this motion, Plaintiffs state as follows:

**Introduction**

Sometimes saying nothing speaks volumes. In its Response, the District repeatedly

claims that the investigation is privileged but never produces any evidence about what legal

advice its investigator, Scott Lassar, was asked to give besides just conducting an investigation.

Since the District has the burden to establish that its investigation is covered by a privilege, its

failure to substantiate its privilege assertion defeats its claim.

What seemingly happened with the investigation is that the District was faced with a

grave public relations nightmare in early 2005 when it came to light that its administrators

ignored complaint after complaint about Sperlik touching girls in his classroom. Hence, in

1

February 2005, it announced to the public with much fanfare that it would get to the bottom of what happened by hiring Scott Lassar to do an investigation. In those announcements, the District never said that it was getting to the bottom of what happened by way of getting legal advice. That is because that was not its intent in hiring Lassar. Indeed, even during this case, the District's School Board members characterized Lassar's purpose as purely an investigation, not as legal counsel. *See* Exhibit D to Plaintiffs' Motion. By all appearances, when Mr. Lassar did issue a report, the District did not like the results and did not wish to disclose it to anyone, so it belatedly claimed that the report was protected by attorney client privilege. To let the District get away with this charade would do the public a great disservice. It was the taxpayers of Berwyn who paid for this investigation and who were promised the results of an investigation. Just because the District does not like the results is no reason to allow the District to hide the investigation.

As for the scope of Plaintiff's discovery request, the District ignores the scope of the documents requested – Plaintiffs asked not just for the report, but for all the documents. In an attempt to avoid production, the District's privilege log names just two documents, including a summary of investigation. If the investigation documents, such as witness statements, have been destroyed then the District should say so – although that would create an entirely different problem of destruction of evidence. If not, the District should have included those documents in a log, and its failure to do so suggests that it is hiding things not just from the parents of Berwyn, but also from this Court. Unless the District is asking this Court to believe that Mr. Lassar conducted an investigation without generating any paper, it is waiving any objections it may have to producing that additional paperwork.

2

## REPLY

**A.    The District Presents this Court with No Evidence or Authority to Support its Bald Claim that Privilege Protects its Non-Disclosure.**

At the end of the day, the District presents this Court with little more than flowery language about the importance of the attorney-client privilege. That is insufficient for the District to hide its investigation. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (party seeking to establish the privilege bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege are met). Rather than provide any factual justification for its privilege claim, the District merely cites *Upjohn v. United States*, 449 U.S. 383 (1981), as if that ends the dispute. It does not.

Instead, the District must still establish that it hired Mr. Lassar to provide legal advice and that any communication was made in confidence for that purpose. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."). It has failed to make that showing. Instead, the only evidence presented to this Court comes from Plaintiff and includes: letters from the District to the public advising that it was investigating what went wrong that allowed Sperlik to abuse so many young girls in the schools; and admissions from at least one School Board member that it hired Scott Lassar to investigate, not to give legal advice. The Seventh Circuit directs that the scope of the attorney-client privilege is narrow, because it is in "derogation of the search for truth." *Id.*

3

(citations omitted).

As for the District's Response, contrary to the District's simplistic arguments, *Upjohn* does not stand for the proposition that anytime an entity's lawyer talks to employees and does an investigation, it is protected by attorney-client privilege. *Upjohn* and the cases interpreting, make clear that determining the existence of an attorney-client privilege requires a fact based determination in each case. *See Upjohn*, 449 U.S. at 386 ("We decline to lay down a broad rule or series of rules to govern all conceivable future questions in this area, even were we able to do so."). *See also*, *United States v. Agnello*, 135 F. Supp. 2d 380, 383-84 (E.D.N.Y. 2001) ("Without a showing that a communication was made by a corporate officer or employee to corporate counsel *for purposes of the corporation's obtaining legal advice*, the privilege is inapplicable.") (emphasis added); *Guzzino v. Felterman*, 174 F.R.D. 59 (W.D. La. 1997) (finding that corporate internal investigation not protected by attorney-client privilege and noting that *Upjohn* still requires case by case determination).

In *Upjohn*, the United States Supreme Court only confirmed that corporations may invoke attorney-client privilege for communications made in the course of providing legal advice. There, the United States Supreme Court expressly found that the investigation at issue was for the purpose of providing legal advice (the key component lacking here) – "As the Magistrate found, 'Mr. Thomas consulted with the Chairman of the Board and outside counsel and thereafter conducted a factual investigation to determine the nature and extent of the questionable payments *and to be in a position to give legal advice to the company with respect to the payments.*'" *Id.* at 394 (emphasis in original).

Those cases still beg the question as to whether Scott Lassar was being asked for legal

4

advice. The only evidence available reveals that the answer is no. First, the District already had counsel who was providing legal advice for it regarding the allegations – the attorneys who have appeared in this case and the District's general counsel. In *Upjohn*, the attorneys were hired expressly to provide legal advice for the subject matter of the investigation – something lacking here. *Id.* Second, the District admitted in its public statements that it was not getting legal advice from Mr. Lassar. Instead, its letters to the public indicated only that Mr. Lassar was going to provide an investigation. This distinguishes it from *Upjohn* in which the lawyers specifically and expressly told the corporate employees that its contacts were confidential. *Id.* at 387.

Another important point distinguishing *Upjohn* from this case is that in *Upjohn*, the Court relied heavily on the pending criminal problems that the corporation (as an entity) was facing. There is no such issue present here, so that the scope of *Upjohn* is lacking. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 920 (8th Dist. 1997).

There are also important policy arguments against shielding this type of investigation. First, such a shield would restrict public access to government misconduct. In the event of any allegation of misconduct, all a government entity would have to do is to hire a lawyer to investigate. If it liked the outcome of the investigation, the entity could release the results (presumably what the District would have done here if it liked the results). If it did not like the results, the government could then just claim attorney-client privilege and censor the results. Such a system makes a mockery out of public accountability.

Second, allowing the investigation to remain secret would amount to a wasting of public assets. *See Grand Jury Subpoena*, 112 F. 3d at 921 ("We also believe that to allow any part of the federal government to use its in-house attorneys as a shield against the production of

5

information relevant to a federal criminal investigation would represent a gross misuse of public

assets."). Finally, there is the ultimate question as to whether the corporate attorney-client

privilege involved in *Upjohn* applies to a school district created under the laws of the State of

Illinois. Given the important policy considerations above, Plaintiffs assert that the District here

cannot invoke the corporate privilege recognized to a limited point in *Upjohn*.

Finally, in trying to distinguish *Pomozal v. Highland Park*, No. 00 C 7472, 2002 WL

425606, at *3 (N.D. Ill. March 19, 2002) (Guzman, J.), the District fails to address the relevant

part of that opinion, Judge Guzman's determination that the mere fact that an investigator is an

attorney does not cloak an investigation with attorney-client privilege:

> The fact that the Witnesses in this case are attorneys with a great deal of
> experience and expertise in litigation no doubt made them better equipped and
> prepared to conduct an investigation as to the practices and policies of the City of
> Highland Park's police department. But we have not been made aware of any
> basis for shielding the relevant information gained by this investigation from use
> in this litigation.

Judge Guzman's determination in *Pomozal* applies equally here – the mere fact that Scott Lassar

is an attorney does not cloak his investigation with the attorney-client privilege.

The bottom line is that the District has not provided this Court with any evidence that its

investigation was anything more than that – an investigation. Instead, it continues to argue about

what Plaintiffs did not produce,[1] ignoring that it is the District's burden to establish privilege and

not Plaintiffs' to disprove it. There is not one shred of evidence that Mr. Lassar was hired to

provide any legal advice, nor that any of his communications were in furtherance of any legal

---

[1] Oddly enough, the District admits that Plaintiffs had to argue in a vacuum because the District
did not produce a privilege log. Given its failure to produce such a log, the District waived any
claim of privilege it asserts here.

advice. Therefore, the District has not met its burden to show that the Scott Lassar investigation (and any documents produced in the course of the investigation) are protected by the attorney-client privilege.

**B.**    **The District Should Be Ordered to Produce Any and All Documents Related to the Scott Lassar Investigation.**

In its Response to Plaintiffs' Motion, the District pretends that Plaintiffs' motion relates only to the investigation results. Wishing it were so, however, does not make it true. Plaintiffs' discovery request could not be more clear that they seek all documents related to the investigation, "Produce any and all documents related to the purported investigation or recommendations by Scott Lassar of the issues surrounding the allegations about Defendant Sperlik as provided for in SD00589." *See* Plaintiff's Ninth Set of Requests to Admit, Exhibit A to Plaintiffs' Second Motion to Compel. Instead of responding to that request, the District here wishes to argue only about the summary report itself.

The District cannot ignore Plaintiffs' broad request, hoping that it will go away, because the claim of privilege cannot be a blanket claim; it "must be made and sustained on a question-by-question or document-by-document basis." *United States v. White*, 950 F.2d at 430 (citations omitted).

Even if the report were privileged, which Plaintiffs do not concede, Plaintiffs seek all of the investigation documents, including notes, drafts and correspondence. Surely not all writings from Mr. Lassar's investigation are privileged documents (witness statements for instance are not privileged) and Defendants must produce those. The District's ongoing refusal to produce a privilege log – even to this Court – suggests that it is hiding something. Regardless, the failure to

provide such logs constitutes a waiver by the District of any privilege defense it may answer to producing any of the investigation documents. *See Applied Systems, Inc. v. Northern Ins. Co. of New York*, 97 C 1565, 1997 WL 639235 at *2 (N.D. Ill. Oct. 7, 1997) (Conlon, J.) ("The failure to object to a discovery request in a timely fashion may constitute a waiver of the objection, including objections based on privilege. The Advisory Committee Notes to the 1993 Amendments of Rule 26 indicate waiver was a contemplated sanction for failing to comply with Rule 26(b)(5): 'To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.'"). (Citations omitted).

### Conclusion

The District has not presented this Court with any evidence that it hired Scott Lassar to provide any legal advice, as required to protect his services through the attorney client privilege. In fact, the only evidence establishes that Mr. Lassar provided only an investigation and not legal advice. Since it has failed to meet its burden to establish that the privilege applies, the District should be ordered to produce all documents related to the investigation.

Respectfully Submitted,

S/Mark Reyes

Attorneys for Plaintiff
Arthur Loevy
Mark Reyes
ARDC No. 06209841
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
loevyreyes@aol.com

## CERTIFICATE OF SERVICE

I, Mark Reyes, an attorney, certify that on September 25, 2006, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing.

S/Mark Reyes