IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANDRA T.-E. AND RUFUS E., on their )
own behalf and as next friend for C.E., )
a minor child, *et al*, )
 )
    Plaintiffs )
 ) No. 05 C 473
  v. )
 ) The Honorable William J. Hibbler
ROBERT SPERLIK, *et al* )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

As the Court noted in its July 23, 2009 Memorandum Opinion and Order (July 23rd Order), the District moves for summary judgment on Plaintiffs' Fourth Amended Complaint. Likewise, the Plaintiffs have moved for summary judgment on several of their claims. The Court's July 23rd Order disposed of the individual Defendants' motions for summary judgment. The Court need not repeat the facts, but instead directs the parties to the July 23rd Order.

*A.  Monell Claims*

The District first moves for summary judgment on Counts I, II, and IV of the Plaintiffs' Complaint, asserting that the Plaintiff cannot meet the requirements of *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell*, municipalities are not vicariously liable for the violations of their employees. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008). Where the execution of a government's policy or custom inflicts a constitutional injury, however, a municipality may be liable for that injury. *Id.* Consequently, to impose liability upon a municipality a plaintiff must demonstrate that: 1) an express policy caused the injury when it was

1

enforced; 2) a widespread practice constituting a custom or policy caused the injury; or 3) a person with final policymaking authority caused the injury. *Id.*

Plaintiffs argue that their injuries were caused by two widespread practices and also that their injuries were caused by persons with final policymaking authority. First, the Plaintiffs argue that their injuries were caused by the District's widespread practice to ignore incidents of sexual abuse. Second, the Plaintiffs argue that their injuries were caused by the District's widespread practice of failing to train its officials to handle allegations of sexual abuse. Finally, the Plaintiffs argue that Grindle (and others, but the Court has granted summary judgment against the Plaintiffs with regard to those others) is a person with final policymaking authority.

The Plaintiffs' argument that District personnel engaged in a widespread practice of ignoring incidents of sexual abuse is cursory, at best. The Plaintiffs begin by asserting that they need not present a "full panoply of statistical evidence" to establish a widespread practice, but need only present sufficient competent evidence to demonstrate a pattern of repeated behavior. It is true that there is no consensus regarding the level of frequency of a challenged custom that evidences a custom, *see Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006), but that general principle alone is not sufficient to preserve Plaintiffs' claim.

The Plaintiffs point to the testimony of their expert who decried the District's sexual misconduct policy. The general shortcomings of the District's policy, however, provide no specific evidence regarding whether District personnel routinely ignore allegations of sexual misconduct. This generalized opinion amounts to little more than "a bald, conclusory statement, void of the requisite specific facts to oppose a summary judgment," similar to the evidence rejected by the Seventh Circuit in *Jones v. City of Chicago*, 787 F.2d 200, 206 (7th Cir. 1986). It is insufficient for

the Plaintiffs to point to an expert who opines that the District's sexual misconduct policy could have been better; they must point to evidence to demonstrate that the policy led to specific instances where District employees ignored sexual misconduct. They have not.

Plaintiffs also point to the "many employees and board members who uniformly failed to follow the policy" after they received knowledge of Sperlik's behavior. As noted in the July 23rd Order, the only District employee who had sufficient knowledge of Sperlik's behavior was Grindle. At most, the Plaintiffs have pointed to three isolated incidents in which a single District employee, Grindle, failed to respond to allegations of sexual misconduct. This evidence is insufficient to demonstrate a widespread practice of an unconstitutional nature. *Cf. Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (inmate who pointed to four instances of alleged unconstitutional conduct did not point to a widespread pattern or practice); *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (inmate who pointed to his own allegation and one other did not provide sufficient factual basis to demonstrate widespread practice).

Plaintiffs next argue that the District had a widespread practice of failing to train its employees to handle complaints of sexual misconduct. Again, the Plaintiffs hinge their argument on their expert's opinion that the District's policy fell short of national standards. To establish *Monell* liability on an alleged failure to train, a plaintiff must demonstrate that a defendant is deliberately indifferent to the rights of persons with whom its employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Deliberate indifference in this context can arise in two contexts. First, a municipality acts with deliberate indifference where the need for training is so obvious and the inadequacy so likely to result in a violation of constitutional rights. Second, a municipality acts with deliberate indifference where a

repeated pattern of constitutional violations makes the need for further training plainly obvious to the municipal policymakers. *Jenkins v. Bartlett*, 487 F.3d. 482, 492 (7th Cir. 2007).

Again, the Plaintiffs fail to connect the District's allegedly deficient training to the violations of the Plaintiffs' rights. The Plaintiffs have put forward no evidence to demonstrate that the deficient sexual harassment policy was so obviously deficient as to alert the District's policy makers that its employees would likely violate the constitutional rights of its students. Similarly the Plaintiffs put forward no evidence to demonstrate that it was plainly obvious that the policy was failing. Instead, they merely present the opinion of an expert that the policy is deficient. Such evidence is insufficient to overcome the District's motion for summary judgment. *See, e.g., Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006) (evidence of deficiencies in police manual insufficient to support a failure-to-train argument); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (in attacking gaps in a policy, plaintiff must demonstrate that a true municipal policy was at work and that policymakers deliberately chose a training program that they knew would prove inadequate); *Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997) (evidence that municipality could have provided better or more training not sufficient to support a failure-to-train argument).

In this instance, the District had a policy on sexual harassment and provided training to its employees regarding that policy. The Plaintiffs have pointed to no evidence that the District knew the policy would prove to be insufficient or that the policy had already failed. Sperlik's arrest in 2005 was the first time that the District learned of Grindle's alleged failure to adhere to the policy.

Finally, Plaintiffs argue that Grindle was a policymaker. In short, the Plaintiffs argue that the District delegated its authority to supervise teachers without review and to ensure children's

4

safety to the principals of its schools. Plaintiffs do not provide evidentiary support for these bold arguments. They point to nothing that suggests that its principals' review of a teacher's job performance is not further reviewed by other District personnel. The Plaintiffs point to no evidence to suggest that the District's principals have the authority to hire or fire its teachers, or even to discipline them without review from other school personnel. Finally, the Plaintiffs point to no evidence to suggest that District principals are solely in charge of administering its sexual harassment policy. Nothing in the record suggests that District principals are the sole custodians of records of sexual harassment complaints, are the only District personnel authorized to conduct investigations into sexual harassment, or are the sole arbiter of discipline resulting from sustained allegations of sexual harassment. Quite simply, the evidence fails to support Plaintiffs' argument.

The Plaintiffs have failed to put forth evidence to demonstrate that their Constitutional injuries were caused by a policymaker or by a District policy. Consequently, the Court GRANTS the District summary judgment on Counts I, II, and IV.

B.    *Title IX Claim*

The District next argues that it is entitled to summary judgment on Plaintiffs' Title IX claim. The District argues that the Plaintiffs cannot demonstrate that a school official with the authority to address the alleged discrimination and administer corrective measures on the District's behalf had actual knowledge of the harassment suffered by the Plaintiffs and was deliberately indifferent to that harassment. *See Mary M. V. North Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997).

Defendants argue that Grindle did not have actual knowledge of the harassment until Grindle received the letter from C.E. and Jane Doe #2, and by that point the students had no further contact

5

with Sperlik. The District implies that, at this point, Grindle could not have known that Sperlik would be a serial harasser or that Grindle was deliberately indifferent to the girls' complaints. The District further suggests that, after learning of Sperlik's misconduct, Grindle took steps to investigate and decided the best solution to the problem.

As noted in the July 23rd Order, this argument depends on an interpretation of the facts in the light most favorable to the District. If a jury believes C.E.'s and Jane Doe#2's testimony that they informed Grindle of the repeated and serious nature of Sperlik's sexual abuse, a jury could conclude that Grindle had sufficient information from which to conclude that Sperlik was, in fact, a child molester. A reasonable jury reaching such a conclusion could further conclude that merely informing a child molester that he was no longer to touch his students (rather than reporting the crime to DCFS or other school personnel) and further misleading the victims' parents as to the nature of the molestation constitutes deliberate indifference to sexual harassment. *See, e.g., Delgado v. Stegall*, 367 F.3d 668, 671-72 (7th Cir. 2004).

The Court DENIES the District's motion for summary judgment on Count VI of the Plaintiffs' Complaint.

C.  *State Law Failure to Supervise*

The District argues that as a matter of law the District did not display utter indifference or conscious disregard for the its students. As with the District's argument regarding the Plaintiffs' Title IX claim, the District depends on an interpretation of the facts in a light favorable to them.

The District suggests that Grindle did *something* in response to the girls' allegations that Sperlik had abused them, pointing both to Grindle's thinly worded warning to Sperlik and her periodic stops to Sperlik's classroom (a fact which the Plaintiffs dispute). In support, the District

relies upon several cases from outside this circuit, which are not relevant here, and one Illinois case, *Doe v. Dimovski*, 336 Ill. App.3d 292, 300 (Ill. App. Ct. 2003). Defendant's also suggest that a failure-to-supervise claim cannot turn upon Grindle's failure to report the girls' allegations to DCFS. Neither argument has merit.

The District first argues, under *Dimovski*, that a plaintiff cannot show willful and wanton conduct unless the school failed to do anything upon learning of the sexual misconduct. *Dimovski*, however, is not so broad. When the Illinois Appellate Court noted the defendant's "failure to do anything" subjected it to liability, it did so in the context of discussing the defendant's failure to report the teacher's sexual misconduct to DCFS, as required by mandated reporting laws. *Id.* at 300. Indeed, the allegations in *Dimovski* noted that the defendant did not undertake a "thorough investigation." *Id.* at 294.[1] Contrary to the District's argument, *Dimovski* simply does not stand for the principle that the flimsiest warning in the face of serious allegations of sexual misconduct insulates a defendant from a failure-to-supervise claim.

As noted in the July 23rd Order, a reasonable jury could conclude that two students informed Principal Grindle that Sperlik was sexually molesting them, doing such things as feeling their breasts, rubbing his penis in their backs, and rubbing the insides of their thighs. The jury could further conclude that, despite this information, Grindle made no effort to stop Sperlik from continuing to abuse his students (other than issue a memo instructing him not to touch his students, although even the timing of the issuance of this memo is in dispute). Moreover, the Plaintiffs have

---

[1] Although the plaintiff in *Dimovski* made this allegation in a claim sounding in negligence, the court later observed that the plaintiff's willful and wanton conduct claim "stemm[ed] from the same set of operative facts underlying plaintiff's allegations of negligence." *Dimovski*, 336 Ill. App. 3d at 299-300.

7

put forward evidence that Grindle affirmatively misled the students' parents so that, for example, they might believe that Sperlik only tapped on their daughters' knees to help them keep the beat. A jury could conclude that a principal who misleads parents about the nature of their daughters' allegations acts with a conscious disregard to the consequences of her actions, both with regard to those students who already have been abused and with regard to those students who have yet to be abused. Finally, like the principal in *Dimovski*, Grindle also failed to report Sperlik's misconduct to DCFS (and also, as Plaintiffs' allege, to other District personnel). *Dimovski*, 336 Ill. App. 3d at 300. The Court holds that the Plaintiffs have pointed to more than sufficient evidence in the record to demonstrate that a District employee with supervisory authority over Sperlik had knowledge of his sexual misconduct and willfully and wantonly looked the other way, ignoring the substantial risk that Sperlik would continue to abuse his students.

The District next argues that allegations that Grindle failed to report Sperlik's behavior pursuant to the Abused and Neglected Child Reporting Act cannot demonstrate the willful and wanton retention and supervision of Sperlik. Illinois courts have held that the Reporting Act does not create a private cause of action against those who violate the act. *Doe 1 v. North Central Behavioral Health Sys., Inc.*, 352 Ill. App.3d 284, 288 (Ill. App. Ct. 2004). Plaintiffs, however, do not pursue a claim based upon a violation of the Reporting Act. Rather, they allege that the fact that Grindle violated the Reporting Act is evidence that demonstrates the willful and wanton supervision of Sperlik. With regard to that matter, *Dimovski* holds quite clearly that a violation of the Reporting Act can support a claim of willful and wanton conduct. *Dimovski* 336 Ill. App. 3d at 299-300.

The Court holds that the Plaintiffs have presented sufficient evidence to support their failure-to-supervise claim.

The District also argues that it is immune from liability under the Illinois Tort Immunity Act (TIA) because Grindle exercised her discretion in responding to Sperlik's sexual misconduct. 745 ILCS 10/2-201. First, *Dimovski* has already rejected the notion that the TIA provides immunity where a defendant fails to comply with the Reporting Act. *Dimovski*, 336 Ill. App. 3d at 296-97. *Dimovski* makes clear that the "reasonable cause to believe" standard of the Reporting Act is the standard of a reasonable person, and not a school employee's subjective belief, and further that the Reporting Act *mandates* a report and vests discretion to investigate allegations of sexual abuse in DCFS employees. *Id.* Second, the District again ignores the fact that the Plaintiff's have put forward evidence that Grindle lied to the parents of the children that Sperlik abused (and also misled other persons in the District about the nature of the girls' allegations). Certainly Grindle was not exercising her discretion if she chose to misinform students' parents about the nature of their daughters' allegations.

Consequently, the Court DENIES the District's motion for summary judgment on Count VIII of the Plaintiffs' Complaint.

D. *Premises Liability Claim*

The Defendants move for summary judgment on Plaintiffs' premises liability claim, arguing that the Plaintiffs have not put forward evidence that the condition of the premises facilitated Sperlik's misconduct.

To support a claim for premises liability, a plaintiff must demonstrate that a defendant failed to "exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3-102(a). The owner of the property must have actual or constructive notice of the dangerous condition. 745 ILCS 10/3-102(a); *Pekin Ins. Co. v. Hallmark Homes, LLC*, — N.E.2d —, 2009 WL

1803184, * 1 (Ill. App. Ct. 2009) (no premises liability unless defendant knew or reasonably should have known of the dangerous condition). Further, the dangerous condition must be the proximate cause of the plaintiff's injury. *Rogers v. Matanda*, — N.E.2d —, 2009 WL 2208410, * 4 (Ill. App. Ct. 2009).

The Plaintiffs argue that the District created a dangerous condition by allowing Sperlik to teach in "remote locations" in each of the three schools. The "remote locations" in which Sperlik taught cannot reasonably be described as a property condition, let alone a property defect. All schools have classrooms that are further away from the central office than others. Nothing about "remoteness" in and of itself is inherently dangerous.

As the District points out, even if the "remote location" in which Sperlik taught could be considered a property defect, the Plaintiffs have put forward no evidence that this defect was the proximate cause of their injury. In fact, Plaintiffs themselves have put forward evidence that Grindle did not supervise Sperlik, even after learning of his abuse; thus whether he was near or far from her office would make little difference in preventing his misconduct.

The liability here results from an independent factor: Sperlik himself (or perhaps, Grindle's failure to monitor Sperlik) and not from a condition of the property. *See, e.g., Laufenberg v. Golab*, 108 Ill. App. 3d 133, 136 (Ill. App. Ct. 1982) (no premises liability where plaintiff struck by a car on a street running through defendant's property as car was an independent factor and injury not attributable to physical condition of the roadway).

The Court GRANTS the District's motion for summary judgment on Count X.

E.   *Respondeat Superior Claim*

Finally, the District moves for summary judgment on Plaintiffs' *respondeat superior* claim. The District argues, rightly, that an employee's intentional torts are *per se* outside the scope of employment. *Delony v. Bd. of Educ. Of Thornton Township*, 281 Ill. App. 3d 775, 783-84 (Ill. App. Ct. 1996). Plaintiffs do not dispute this general premise, but instead argue that a jury could return a verdict that Sperlik committed some tort — assault and battery — that was within the scope of his employment. The Plaintiffs suggest that a jury could believe the testimony that Sperlik merely tapped the beat upon his students knees or placed his hand upon their shoulders to correct their posture, not out of any desire for sexual gratification (which would clearly fall outside of the scope of his employment), but rather in pursuit of his goals as a music teacher. This *was* the story Sperlik told to Grindle (and, according to Plaintiffs, the one Grindle told the student-Plaintiffs' parents). It is no longer disputed, however, that Sperlik touched his students for the purposes of his sexual gratification. Sperlik has pleaded guilty to several counts of sexual misconduct and the Plaintiffs themselves have described Sperlik's behavior in the strongest of language (a characterization that the District does not dispute). The Court finds that no reasonable jury could conclude that the torts committed by Sperlik were motivated in part by a purpose to serve his employer. Clearly, they were not and were instead committed in pursuit of his desire for sexual gratification.

The Court GRANTS the District's motion for summary judgment on Count XIII.

F.     *The Plaintiffs' Motion*

The Plaintiffs, like the District and the individual Defendants, also move for summary judgment. Plaintiffs first argue that the Court should grant summary judgment in their favor on their equal protection claim against Grindle. Plaintiffs' argument on this count depends upon a presentation of the facts in the light most favorable to them. Plaintiffs assert that Grindle knew the

full extent of Sperlik's misconduct; that she affirmatively hid the girls' allegations against Sperlik; that she did nothing to remedy Sperlik's misconduct. While evidence in the record supports these claims, the facts that Plaintiffs rely upon are in dispute. Grindle asserts that the girls told her nothing more than what they put in the letter; that she met with their parents and fully described the girls' allegations; that she investigated the allegations and spoke with Sperlik; that he described the inappropriate touching as a pedagogical tool; that after receiving the complaints she monitored Sperlik's classroom. Just as a reasonable jury could find in favor of the Plaintiffs, a reasonable jury could credit Grindle's version of events: that the allegations lodged by the student-Plaintiffs were not sufficiently serious to alert Grindle of the full nature of Sperlik's misconduct and that she took steps to correct that misconduct.

The Plaintiffs also urge the Court to grant them summary judgment on their Title IX claims against the District and Grindle and upon other constitutional claims they lodge against Grindle. As with the Plaintiffs' principal argument for summary judgment, these arguments depend upon a presentation of the facts in the light favorable to them.

Accordingly the Court DENIES the Plaintiffs' motion for summary judgment in its entirety.
IT IS SO ORDERED.

7/29/09
Dated

Hon. William J. Hibbler
United States District Court